**DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| DLJ MORTGAGE CAPITAL, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LINCOLN ROLAND and LEILA ROLAND, )<br>a/k/a L. ROLAND, )<br>)<br>Defendants. )<br>_____) | Civil Action No. 2013-0010 |

**Attorneys:**
**Warren B. Cole, Esq.,**
**Elisa Catera, Esq.,**
St. Croix, U.S.V.I.
   *For Plaintiff*

**MEMORANDUM OPINION**

**Lewis, Chief Judge**

THIS MATTER comes before the Court on the "Motion for Default Judgment" filed by Plaintiff DLJ Mortgage Capital, Inc. ("DLJ") against Defendants Lincoln Roland and Leila Roland, a/k/a L. Roland (collectively, the "Rolands"). (Dkt. No. 22). For the reasons discussed below, the Court will grant Plaintiff's Motion.

**I.   BACKGROUND**

On February 4, 2013, FirstBank Puerto Rico ("FirstBank") filed a complaint against the Rolands, alleging causes of action for debt and foreclosure of real property mortgage. (Dkt. No. 1). On September 26, 2013, FirstBank moved to amend the complaint to substitute DLJ Mortgage Capital, Inc. ("DLJ") as Plaintiff, pursuant to Fed. R. Civ. P. 25, and to set forth additional allegations concerning the assignment of the Note and Mortgage to DLJ which occurred after the original Complaint had been filed. (Dkt. No. 13). The Court granted the

Motion to Amend (Dkt. No. 15), and DLJ filed a First Amended Complaint (the "Amended Complaint") on October 1, 2013. (Dkt. No. 16).

The Amended Complaint asserts that, on January 15, 2008, Defendant Lincoln Roland executed and delivered to FirstBank a promissory note (the "Note"), which obligated him to pay the principal amount of $75,000.00, together with interest at a rate of 7.125% per annum. *Id.* ¶¶ 5. Also on January 15, 2008, to secure payment on the Note, the Rolands executed and delivered to FirstBank a Mortgage encumbering the following property (the "Property") described in the Warranty Deed as:

> Parcel No. 493 Estate Mon Bijou, Matricular 9a, King's Quarter, St. Croix, Virgin Islands comprising an area of 5,600 square feet as shown on map drawn by Co-Build Companies, Inc. (formerly West Indies Enterprises, Inc.) dated November 2, 1968, Public Works Department File No. 1863-B.

(Dkt. No. 26-1).

The Amended Complaint alleges that the Mortgage and Note were subsequently assigned from FirstBank to DLJ in June 2013. (Dkt. No. 16, ¶ 7). The Amended Complaint further alleges that, despite demand, Lincoln Roland failed to pay the amounts due under the Note and was therefore in default, and that the sums due have been accelerated. *Id.* ¶ 8. As of September 11, 2013, the Amended Complaint alleges that the following sums are due and owing: $78,274.05 in unpaid principal balance; interest in the amount of $6,910.52, for a total indebtedness of $85,184.57. Interest continues to accrue at the rate of $15.14 per diem. *Id.*

The Rolands were served with a copy of the Summons and Complaint on February 23, 2013. (Dkt. Nos. 5, 6). They have not answered the Complaint or the Amended Complaint, or appeared in this action. On March 14, 2014, DLJ filed an Application for Entry of Default

against the Rolands. (Dkt. No. 20). The Clerk of Court entered default against the Rolands on March 27, 2014. (Dkt. No. 21).[1]

On July 14, 2014, DLJ filed its Motion for Default Judgment (the "Motion") (Dkt. No. 22), along with a "Memorandum of Law in Support of Motion for Default Judgment" (Dkt. No. 23), and a Declaration for Attorney's Fees and Costs. (Dkt. No. 24). In response to a Court Order dated December 30, 2014, DLJ submitted additional documentation in support of its Motion on January 16, 2015 (Dkt. No. 26) and February 6, 2015 (Dkt. No. 27).

In its Memorandum of Law, DLJ argues that the procedural elements for default judgment have been satisfied because: the Rolands were properly served with copies of the Summons and Complaint; they failed to enter an appearance or answer the Complaint; and the Clerk of Court entered default against them on the original Complaint and the Amended Complaint. (Dkt. No. 23 at 3). In addition, DLJ attached excerpts from deposition testimony of Lystra James, the niece of Lincoln Roland, and Raymond James, Lystra James' husband, in which they testified that the Rolands are competent adults who were not serving in the U.S. uniformed services. *Id.*; Dkt. Nos. 23-2, 23-3. DLJ has also provided two Status Reports from the Department of Defense Manpower Data Center showing that, pursuant to investigations conducted on February 4, 2013 and February 6, 2015, using official online resources provided by the Department of Defense's Manpower Data Center, there was no record that Lincoln Roland was an active member of the military service pursuant to the Servicemembers Civil Relief Act. (Dkt. Nos. 23-4, 27-1). In its supplemental filing, DLJ states that it was unable to provide a military status report for Leila Roland because it lacked a date of birth or Social Security number

---

[1] The Clerk of Court also entered default against the Rolands on the initial Complaint. (Dkt. No. 9).

for her, but submitted Lystra James' deposition testimony that Leila Roland was residing in Canada, was undergoing daily dialysis treatment, and that she did not believe she was on active duty in the uniformed services. (Dkt. No. 26-6 at 6).

In its supplemental filing, DLJ provided a copy of the Warranty Deed, which showed that the Property was deeded to Lincoln Roland and Anetha Roland in 1971 as tenants by the entirety. (Dkt. No. 26-1). Anetha Roland died in May 2000, as shown by a copy of a Death Certificate attached to the supplemental filing. (Dkt. No. 26-2). The title report for the Property indicates that, thereafter, the titleholder was Lincoln Roland. *Id.* DLJ explains that because Leila Roland signed the Mortgage in 2008, she was joined as a party in this matter in order to foreclose any interest she may have in the Property. (Dkt. No. 26 at 2).

On the merits of its claims, DLJ has shown that Lincoln Roland executed the Note and the Rolands executed the accompanying Mortgage; Lincoln Roland defaulted under the terms of the Note and the Mortgage; Lincoln Roland was given proper notice of the default and he failed to cure the default; and DLJ elected to accelerate the amounts due and owing upon default, and foreclose on the Property. (Dkt. Nos. 23, 26). In addition, DLJ asserts that it has demonstrated its entitlement to default judgment under the factors set forth in *Chamberlain v. Giampapa*, 210 F.3d 154 (3d Cir. 2000). (Dkt. No. 26).

DLJ filed two Declarations in Support of its Motion for Default Judgment: the first one, signed by Mark Lochhead, accompanied the initial Motion (Dkt. No. 23-1); the second one, signed by Ryan Fullmer, accompanied the supplemental filing and updated the earlier Declaration. (Dkt. No. 26-4). Mr. Fullmer, a Document Control Officer at Select Portfolio Servicing, Inc., explained that he made the Declaration based on personal knowledge and belief, and after diligent review of the books and records of DLJ. *Id.* ¶ 4. The Declaration sets forth the

amounts due and owing through January 7, 2015: $78,274.05 in unpaid principal balance; interest from May 1, 2012 through January 7, 2015 in the amount of $14,693.74; negative escrow balance of $5,803.86, and a recoverable balance of $2,294.00. *Id.* ¶ 8. Mr. Fullmer asserts that interest accrues at the per diem rate of $14.70. *Id.* He attached as an exhibit a copy of the corporate advance and escrow advance breakdown, which showed that the corporate advance sums were comprised of inspections, broker price opinions, and property preservation fees, and showed that the escrow advance sums were comprised of hazard insurance and property tax payments. (Dkt. No. 26-4).

In the Declaration of Counsel in Support of Costs and Attorney's Fees, DLJ's Counsel, Elise Catera, Esq., averred that she is an associate at the firm of Hunter & Cole, and that firm partner Warren B. Cole billed at $275.00 per hour on this matter and that she billed at $225.00 per hour. (Dkt. No. 24). The billing records were updated in the supplemental filing. (Dkt. No. 26-5). Attorney Catera attached billing records showing that the total time spent on this matter was 37.29 hours through January 15, 2015; that the total amount of attorney's fees incurred was $6,928.95; and that the total amount of costs expended was $1,283.90. *Id.*

## II. APPLICABLE LEGAL PRINCIPLES

In a motion for entry of default judgment, the Court accepts as true any facts contained in the pleadings regarding liability. Fed. R. Civ. P. 8(b)(6). Legal conclusions, however, are not deemed admitted, nor are the extent and amount of damages claimed by a party. *Star Pacific Corp. v. Star Atlantic Corp.,* 574 F. App'x 225, 231 (3d Cir. 2014) (citing *DIRECTV, Inc. v. Pepe*, 431 F.3d 162, 165 (3d Cir. 2005)); Fed. R. Civ. P. 8(b)(6). Parties are not entitled to an entry of default judgment as of right; instead, the matter is addressed to the sound discretion of the court. *Tozer v. Charles A. Krause Milling Co*., 189 F.2d 242, 244 (3d Cir. 1951). In the

context of a grant of default judgment pursuant to Federal Rule of Civil Procedure 55, "'[t]he district court must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty.'" *Star Pacific Corp.*, 574 F. App'x at 231 (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)).

A motion for entry of default judgment must contain evidence, by affidavits and/or documents, of the following:

> "(1) the entry of default pursuant to Rule 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor an incompetent [person]; (4) that the defendant has been validly served with all pleadings; (5) the amount of judgment and how it was calculated; (6) and an affidavit of non-military service in compliance with the Soldiers' and Sailors' Civil Relief Act."

*Idewu v. Sealey*, 2012 WL 944781, at *2 (D.V.I. Mar. 19, 2012) (quoting *Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare, Vacation & Finishing Trades Inst. Funds v. Village Glass, Inc.,* 2012 WL 209076, at *1 (D.N.J. Jan. 3, 2012)); *see also* Fed. R. Civ. P. 55(b). Additionally, the Court must assess three factors when determining whether default judgment is appropriate: "(1) prejudice to the plaintiff if default is denied, (2) whether the defendant appears to have a litigable defense, and (3) whether defendant's delay is due to culpable conduct." *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000).

### III. ANALYSIS

**A. Default Judgment**

DLJ has satisfied all of the requirements necessary to obtain a default judgment against the Rolands. It has shown that: (1) default was entered against the Rolands by the Clerk of Court on both the initial Complaint and the Amended Complaint (Dkt. Nos. 9, 21); (2) the Rolands have not appeared; (3) the Rolands are neither infants nor incompetent persons (Dkt. Nos. 23-2,

23-3); and (4) the Rolands were validly served with process. (Dkt. Nos. 5, 6). DLJ has also shown with specificity how it calculated the amounts due and owing. (Dkt. No. 26-4).

In addition, DLJ provided copies of Military Status Reports from the Department of Defense Manpower Data Center showing that Lincoln Roland is not in the military service as defined in the Servicemember's Civil Relief Act, 50 App. U.S.C. §§ 501 *et seq.* (Dkt. Nos. 23-4, 27-1). Further, it has provided sworn testimony from Lystra James who stated that she did not believe that Leila Roland was on active duty in the armed forces. (Dkt. No. 26-6 at 6). Pursuant to 50 App. U.S.C. § 521(b)(1), a plaintiff in a civil action is required to file an affidavit stating whether the defendant is in the military service and showing the necessary facts to support that conclusion, or an affidavit stating that the plaintiff cannot determine whether the defendant is in military service. DLJ's sworn statements of Lystra James describing Leila Roland as an elderly woman residing in Canada who is ill and requires daily medical treatment in a hospital, and stating that she did not believe Leila Roland is a member of the armed forces, suffices to satisfy the statute.

Finally, the Court has considered the *Chamberlain* factors and finds that the prejudice to DLJ resulting from the Rolands' breach of their contractual obligations, together with the apparent absence of a litigable defense, weigh in favor of the Court granting default judgment. In addition, the Rolands' default was a result of their culpable conduct as evidenced by their refusal to respond to the Complaint or the Amended Complaint. *See World Ent'mt Inc. v. Brown*, 487 F. App'x 758, 762 (3d Cir. 2012) (finding that defendant engaged in culpable conduct by, *inter alia*, failing to respond to complaint because such failure showed a willful disregard for plaintiff's legal communications); *Cohen v. Gabriel Enters., Inc.*, 2013 WL 1154847, at *5

(D.V.I. Mar. 21, 2013) (citing cases finding culpable conduct where defendants failed to answer complaint). Accordingly, default judgment is appropriate.

### B. Attorney's Fees and Costs

Title 5 of the Virgin Islands Code, Section 541(b), governs the award of attorney's fees in the Virgin Islands. The statute states, in pertinent part: "The measure and mode of compensation of attorneys shall be left to the agreement, express or implied, of the parties . . . ." 5 V.I.C. § 541(b).

Under both the terms of the Note and Mortgage, the Bank may recover "reasonable" attorney's fees and costs of court. (Dkt. No. 16-1, ¶6(E); Dkt. No. 24, ¶ 22). The Court will look to the body of case law interpreting 5 V.I.C. § 541(b) for guidance in assessing what attorney's fees may be "reasonable." *Flagstar Bank, FSB v. Stridiron*, 2013 WL 5941298, at *6 (D.V.I. Oct. 31, 2013).

"To determine a fair and reasonable award of attorneys' fees [under § 541(b)], the Court considers factors including the time and labor involved, skill required, customary charges for similar services, benefits obtained from the service and the certainty of compensation." *Staples v. Ruyter Bay Land Partners, LLC*, 2008 WL 413308, at *1 (D.V.I. Feb. 6, 2008) (citing cases). The Court undertakes a two-step inquiry when examining the reasonableness of attorney's fees. First, the Court determines whether the hours billed were "reasonably expended," excluding time billed that is "excessive, redundant, or otherwise unnecessary." *Berne Corp. v. Gov't of Virgin Islands*, 2012 WL 369535 at *10 (D.V.I. Feb. 3, 2012) (quoting *Pub. Interest Research Group of N.J., Inc. v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)). Second, the Court determines whether the hourly rate sought is reasonable, in comparison to prevailing market rates in the relevant community "for similar services by lawyers of reasonably comparable skill, experience, and

reputation." *Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990); *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001); *Berne Corp.*, 2012 WL 369535 at *10.

DLJ seeks $6,928.95 in attorney's fees as compensation for 37.29 hours of work billed in this matter. This amount is substantially higher than most requests for attorney's fees in run-of-the-mill default judgment debt and foreclosure case. *See, e.g., Bank of America v. Deshazer*, 2014 WL 7450487, at *5 (D.V.I. Dec. 30, 2014) (awarding $3,645.00 in attorney's fees for 14.55 hours of work); *Flagstar Bank FSB v. Rivers,* No. 12-cv-93, (D.V.I. Mar. 18, 2014) (awarding $2,107.50 in attorney's fees where counsel spent a total of 10.00 hours on the case).

Having reviewed the billing history, the Court understands and accepts that there are certain circumstances about this matter that would necessarily result in the expenditure of some additional attorney's fees. For example: (1) the Defendants live in Canada, which required research concerning how to properly effect personal service there; (2) DLJ's counsel was engaged in discussions with family members of the Rolands living on St. Croix who were interested in bringing the mortgage current; (3) the Note and Mortgage were assigned to DLJ after the case had commenced, requiring the filing of a Motion to Amend and an Amended Complaint; and (4) establishing ownership of the Property involved more than simply providing a copy of the deed. Nonetheless, there is other attorney time that the Court finds excessive, unnecessary, or incurred as a result of shortcomings for which DLJ is responsible. For example, the billing record is replete with status updates in this relatively straightforward debt and foreclosure action. In addition, while DLJ chose to conduct depositions of Raymond James and Lystra James, it is not readily apparent why depositions were chosen as the vehicle to obtain the necessary information. DLJ also billed for responding to the Court's Order to Show Cause, which was issued as a result of the lack of progress in this case. Further, additional time was

billed for providing supplemental information and documentation in response to a Court Order, some of which should have been provided in DLJ's initial submission in support of the Motion for Default Judgment. Finally, the Court notes that $110.00 was billed by a partner to "File [the] Complaint," a seemingly ministerial task that would not appear to require partner time. Considering these areas of concern, the Court finds that the total amount of fees requested is excessive and therefore unreasonable. Accordingly, the Court will reduce the requested fees by $2,000.00, to $4,928.95.[2]

With regard to the second step of assessing the reasonableness of attorney's fees—whether the hourly rate sought is reasonable—Virgin Islands courts "have generally concluded that a reasonable hourly rate in this jurisdiction spans from $125 to $300 per hour." *Anthony on Behalf of Lewis v. Abbott*, 2012 WL 2752154, at *3 (D.V.I. July 9, 2012) (citing cases). The Court concludes that the $275.00 per hour rate charged by Attorney Cole, as a partner, and the $225.00 per hour rate charged by Attorney Catera, as an Associate, are reasonable and fall within the scope of rates for such services.

Based on the foregoing, the Court finds that $4,928.95 in attorney's fees is reasonable and will be awarded.

With regard to costs, under the terms of the Note, Lincoln Roland agreed to pay "all of [DLJ's] costs and expenses in enforcing this Note to the extent not prohibited by applicable law." (Dkt. No. 16-1, ¶ 6(E)). In addition, under the terms of the Mortgage, DLJ is entitled to collect

---

[2] Approximately $592.00 in attorney's fees was billed for status updates; $780.00 was billed for depositions; $457 was billed for the response to the Order to Show Cause; $614.75 was billed for the supplemental documentation in response to the Court Order; and $110.00 was billed for the filing of the Complaint by a partner. These attorney's fees total $2,553.75. Recognizing the need for some of the billing—in particular, as it relates to the supplemental response—the Court will allow $553.25 of that amount and reduce the request for attorney's fees by $2,000.00.

"costs of court." (Dkt. No. 24, ¶ 22). The Court infers that in order for costs to be reimbursed, they must be reasonable. *Cf. Lewis v. Mazda Motor of Am.,* 2012 U.S. Dist. LEXIS 180222, at *7 (D.V.I. Dec. 20, 2012) (awarding reasonable costs in discovery dispute); *Galt Capital, LLP v. Seykota*, 2007 WL 4800135, at *3 (D.V.I. Dec. 20, 2007) (opining that Virgin Islands fee-shifting statute governing the award of attorney's fees and costs permits reimbursement for reasonable fees and costs).

DLJ is seeking reimbursement of $1,283.90 for the following costs: filing fees, process server fees, title search fees, witness fees, and deposition transcripts. (Dkt. No. 26-5). The Court finds that the costs associated with the deposition, totaling $398.90, are not reasonable and will not be allowed. The remaining costs are reasonable, and—pursuant to the plain language of the Mortgage—the Court will award costs in the amount of $885.00.

## IV. CONCLUSION

DLJ has satisfied the requirements necessary for entry of a default judgment against Lincoln Roland and Leila Roland, a/k/a L. Roland. Accordingly, Plaintiff's Motion for Default Judgment (Dkt. No. 22) on the debt and foreclosure causes of action will be granted. In addition, the Court will award $4,928.95 in attorney's fees and $885.00 in costs, for a total award of $5,813.95 in attorney's fees and costs through January 15, 2015.

An appropriate Judgment and Order accompanies this Memorandum Opinion.

Date: March 31, 2015                                   _____/s/_____
                                                       WILMA A. LEWIS
                                                       Chief Judge